UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MELINDA WILSON, )<br>)<br>Plaintiff, )<br>)    1:09-cv-1024-SEB-TAB<br>vs. )<br>)<br>MICHAEL J. ASTRUE, Commissioner of )<br>the Social Security Administration, )<br>)<br>Defendant. ) | |

**ENTRY**

Melinda Wilson seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, et seq. For the reasons explained in this Entry, the Commissioner's decision is <u>AFFIRMED</u>.

*Background*

Wilson initially applied for DIB on September 15, 2002, alleging an onset of disability of January 1, 2000, and was denied benefits by the Administrative Law Judge ("ALJ") on June 25, 2003. On March 11, 2005, Wilson filed a new claim, alleging an onset date of June 26, 2004. A hearing for the second claim was conducted on March 7, 2008. Wilson appeared, accompanied by her attorney Annette Lee Rutkowski. Medical and other evidence were introduced at the hearing. Wilson, a medical expert ("ME") Dr.

Arthur Lorber, and a vocational expert ("VE") Constrance Brown, testified at the hearing. The ALJ issued a decision denying benefits on April 18, 2008 and the Appeals Council denied review on July 8, 2009, making the ALJ's decision final. See Getch v. Astrue, 539 F.3d 473, 480 (7th Cir. 2008). This action for judicial review of the ALJ's decision followed. The Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision concluded that Wilson was not disabled and included the following findings: (1) Wilson met the insured status requirements of the Act through December 31, 2007; (2) Wilson had not engaged in substantial gainful activity since June 26, 2004, the alleged onset date; (3) Wilson had "severe" impairments consisting of fibromyalgia, bilateral osteoarthritis of the knees and obesity; (4) Wilson did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Wilson had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a), provided that she lift no more than ten pounds (such as occasionally lifting docket files, ledgers and small tools), sit for 6 hours during an eight hour work day; walk/stand for only 30 minutes at a time – and only two hours total during an eight hour work day. Furthermore, Wilson should not work on slippery or uneven surfaces, at unprotected

heights, or on dangerous moving machinery, and she should have one additional day off per month; and (6) Wilson was incapable of performing any of her past relevant work as a video store clerk with the limitations on standing and walking provided by Wilson's residual functional capacity.  With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Wilson had not been under a disability as defined in the Act from June 26, 2004, through the date of the ALJ's decision.

## *Discussion*

### I.  Applicable Law

To be eligible for DIB, a claimant must prove that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  To establish disability, Wilson is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms."  20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in the Social Security regulations is used to determine disability status.  Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves her unable to perform her past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

Id. The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. Id. at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of Wilson's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. Kendrick v. Shalala, 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting Consolidated Edison v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938)).

## II. Analysis

In this case, the ALJ determined that Wilson had "severe" impairments consisting of fibromyalgia, bilateral osteoarthritis of the knees and obesity, but that she had the capacity to perform sedentary work with certain limitations. Wilson argues that the ALJ's decision was not supported by substantial evidence. Specifically, Wilson contends

that the ALJ's residual functional capacity ("RFC") assessment was flawed because the ALJ failed to grant controlling weight to the opinions of Wilson's treating physicians. (Pl.'s Br. 12.)  Wilson also argues that the ALJ erred by failing to re-contact her treating physicians to clarify inconsistencies in their opinions, thus basing his rejection of the doctors' opinions on speculation or bias. (Id. at 16.)  Wilson further contends the ALJ erred by failing to provide a full transcript of the record from her 2002 DIB hearing and that the ALJ failed to meet his burden of proof under Step 5 of the SSA Disability evaluation by not providing sufficient evidence of potential employment opportunities for individuals with Wilson's limitations.  (Id. at 17,18.)

Wilson first contends that the ALJ did not give proper weight to the opinions of her treating physicians, Dr. Kalovidouris and Dr. Brown, with respect to her fibromyalgia, bilateral osteoarthritis of the knees and obesity.  She argues that the ALJ should have given controlling weight to the doctors' opinions because they had treated Wilson for multiple years, their opinions were consistent with their treatment record, and given the subjective nature of evaluating fibromyalgia, her treating physicians were most knowledgeable as to the extent of her limitations. (Id. at 16.)

Wilson's medical record shows that in November 2003, Dr. Kalovidouris diagnosed Wilson with "Osteoarthritis of the knees, Fibromyalgia, and Depression." (R. at 166, 9.)  In April 2004, he added obesity to his diagnosis after Wilson complained of restlessness, fatigue and pain in her knees with activity. (R. at 161.)   Dr. Kalovidouris reported that Wilson's symptoms "frequently" interfere with attention and concentration

for even simple work tasks, requiring breaks from work lasting one to two days. (R. at 255.) He opined that Wilson could sit for four hours in an eight hour work day and stand for up to two hours, but only for ten minutes at a time. (Id.) Moreover, Dr. Kalovidouris stated that she could occasionally lift up to 20 pounds and occasionally perform most head and shoulder movements, but he limited her use of her arms and fingers to only 20% of each day. (R. at 256.) He also opined that Wilson would be absent from work four or more days per month. (Id.)

In 2005, Wilson's family physician, Dr. Brown, also completed a fibromyalgia RFC questionnaire on Wilson, identifying symptoms such as "tender points, non-restorative sleep, chronic fatigue, morning stiffness, frequent and severe headaches, numbness and tingling, depression, and temporomandibular joint dysfunction." (R. at 284.)

The ALJ discussed the medical evidence relating to Wilson and found that she had severe impairments including fibromyalgia, bilateral osteoarthritis of the knees, and obesity as required by SSA regulations. (R. at 31.) However, the ALJ gave "little or no weight" to her physicians' opinions as they pertained to the extent of Wilson's disability, stating that their opinions were "not supported by the substantial weight of the record, or even the testimony of the claimant." (Id.) Instead, the ALJ gave weight to the testimony of the medical expert ("ME") who testified that "the claimant's exertional limitations were consistent with the ability to perform light work." (Id.) However, the ME went on to say that Wilson's "osteoarthritis condition in her knees would limit her to no more than

30 minutes standing or walking at one time, no work on slippery or uneven surfaces, and no work around . . . unprotected heights and moving machinery." (Id. at 32.) The ALJ further noted that the opinions of a consultative examiner, the State agency reviewing physicians, and the ME were consistent with the range of work the ALJ determined was within Wilson's RFC. (Id.)

In assessing Wilson's RFC, the ALJ found Wilson's subjective allegations of incapacity and limitations to be overstated and lack credibility. (R. at 31.) The ALJ concluded that while Wilson's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent that they were inconsistent with the ALJ's RFC assessment. (R at 29.) In finding that Wilson lacked credibility, the ALJ provided a number of examples to explain his reasoning. (Id.)

Although the ALJ's credibility determination is entitled to deference, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."[1] SSR 96-7p; see also Brindisi v. Barnhart, 315 F.3d 783, 787 (7th Cir. 2003) (pursuant to SSR 96-7p, ALJ must "articulate the reasons behind credibility evaluations".) The depth of the ALJ's assessment of

---

[1] Wilson did not challenge the ALJ's credibility determination; however, the ALJ's analysis of Wilson's credibility is useful in understanding his reasoning for giving such little weight to the treating physicians' opinions.

Wilson's credibility complied with the appropriate regulations for credibility assessment. See SSR 96-7p, SSR 96-4p, and 20 C.F.R. § 1529. The ALJ laid out the evidence that he considered and provided reasoning for why that evidence detracted from Wilson's credibility. (R. at 29-32.) The ALJ cited the lack of objective evidence in the record, which was limited to a single knee x-ray from 2005, to substantiate Wilson's symptoms, he cited Wilson's ability to complete daily activities,[2] and also noted that Wilson's treatment habits were inconsistent for a patient suffering from her alleged symptoms.[3]

Wilson claims that because the ALJ did not believe her to be credible, he gave "little to no weight" to the opinions of her treating physicians. (Pl's. Br. 6.) In order for an ALJ to disregard the opinion of a treating physician, it must be based on medical evidence or authority in the record and may not amount to simply the ALJ's substituted judgment of the claimant's condition. (Pl's. Br. 14); citing Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000). Wilson claims that the because the ALJ gave "little or no weight" to the opinions of the treating physicians, he substituted judgment. (Pl's. Br. 14.) However, a treating physician's opinion is not automatically entitled to controlling weight. The Seventh Circuit Court of Appeals has held that if well-supported evidence is introduced that contradicts the opinion of a treating physician, even if it is that of non-treating, non-examining physicians, then the treating physician evidence is not controlling

---

[2] Wilson testified that she was capable of completing most daily activities such as bathing, getting dressed, cooking, cleaning, driving, taking care of a pet and shopping. She also indicated that she goes out to eat 3-4 times per week, she is able to drive a car, and in 2007 she took a family vacation to Washington D.C. (R. at 26.)

[3] Wilson only saw Dr. Kalovidouris twice a year and had only received two pain injections over the seven-year span that she had complained of intense symptoms. (R. at 31.)

and is just one more piece of evidence to consider.  Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006).  In Hofslien, the court recognized that while a treating physician has the advantage over non-examining physicians due to having spent time with the claimant,

> the fact that the claimant is the treating physician's patient also detracts from the weight of that physician's testimony, since, as is well known, many physicians (including those most likely to attract patients who are thinking of seeking disability benefits) will often bend over backwards to assist a patient in obtaining benefits.

Id. (internal citations omitted); see also Schmidt v. Astrue, 496 F.3d 833, 842 (7th Cir. 2007).  In addition, a treating physician's statement that a claimant is disabled or cannot work is not conclusive.  See Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir.2000) ("A claimant, however, is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled' or 'unable to work.' ")  In this case, the record provides well-supported, sufficient evidence, extending beyond the claimant's lack of credibility, which justifies the ALJ's decision not to award controlling weight to the treating physicians' opinions.

However, it is worth noting that, although the ALJ stated that he applied "little to no weight" to the physicians' opinion, he did set Wilson's physical limitations consistent with Dr. Kalovidouris's opinion. Specifically, the ALJ set Wilson's standing and walking limitations to no more than 30 minutes at a time, and no more than two hours in an eight hour work day, just as Dr. Kalovidouris' record suggested.  (Pl.'s Br. 11; R. at 30.)  The ALJ also noted that based upon Wilson's testimony and the medical record, he reduced her lifting capabilities to no more than 10 pounds, consistent with a sedentary work level.

(R. at 30.)  However, instead of giving the treating physicians' opinions controlling weight, the ALJ appears to have adopted the opinions of the ME, a consultative examiner and the State agency physician in assessing the extent of Wilson's disability. (R. at 31.)

The ME testified that the objective findings on record showed that Wilson's osteoarthritis was severe; however, it did not meet or medically equal the criteria under Listing of Impairment 1.02 A, which require an inability to ambulate effectively. (R. at 27.)   The ALJ also agreed with the ME's testimony in finding that Wilson's fibromyalgia does not meet or medically equal any of the disability criteria.  (Id.)  Lastly, the ALJ stated that the record contained no evidence that obesity precluded Wilson's ability to ambulate effectively, nor did it combine with any other impairments to meet any of the impairments described in the Listing of Impairments.  (Id.)

The ALJ also cited numerous inconsistencies between Wilson's alleged symptoms and medical opinions on record.  The ALJ noted that Dr. Brown's opinion that "essentially indicates the claimant is not only disabled, but barely capable of moving at all" was not supported by Wilson's testimony that she is capable of cooking, shopping, driving, going out to dinner, etc. (R. at 26.)  The ALJ further noted Dr. Kalovidouris opinion that Wilson cannot stand or walk without an assistive device, yet not only is there is no mention of the use of an assistive device in any of his examination reports beyond their first meeting in July 2004, but the reports even state that Wilson had a normal gait. (R. at 29, 31.)  Also, Wilson complained that her condition had caused her hands to become so weak that she constantly dropped things and occasionally had difficulty with

fine manipulation. However, the ME testified that there was no evidence in the record to support Wilson's complaint, and a physical examination of Wilson revealed her grip strength to be a 4.5 out 5 bilaterally, and her fine finger manipulation was normal with the ability to fasten snaps and buttons. (R. at 26.)

The record in this case also indicates that in May 2005 Wilson received a psychiatric evaluation by Dr. Karkut yielding a primary diagnosis of malingering[4] and a Global Assessment of Fuctioning ("GAF") of 70.[5] (R. at 27.) The ALJ noted that subsequent psychiatric evaluations corroborate Dr. Karcut's diagnosis of malingering. (Id.) In a 2007 psychiatric evaluation, Dr. Estes reported that there were inconsistencies throughout his evaluation which "raise[d] concern of diminished effort and that Mrs. Wilson may have presented herself in a negative light." (R. at 333.) Wilson's history of impairments was also reviewed by state agency physicians in 2005, who opined that she could perform a range of light exertion work that did not require ladders or scaffolds – consistent with the ALJ's RFC assessment. (R. at 112-18.) State agency psychologists also evaluated Wilson's medical record and reported that she did not have a "severe" mental impairment – a conclusion consistent with the ALJ's decision that Wilson's depression was not "severe" under SSA regulations.[6] (R. at 124.)

---

[4] Dr. Karkut noted that Wilson insisted that she could not recall the events of the prior day, yet she was capable of describing her impairments in detail. (R. at 27.)

[5] A GAF of 70 "indicated mild symptoms of some difficulty in social and occupational functioning." (R. at 27.)

[6] It should also be noted that Wilson received a psychiatric evaluation for symptoms of depression in 2007 and was diagnosed as having "major depressive disorder, Personality disorder NOS and a GAF of 55." (R. at 321.) The ALJ found that, based on the medically

(continued...)

Wilson further claims, that the ALJ's RFA calculation was inaccurate because he failed to re-contact her treating physicians to clarify their opinions, and thus the ALJ's decision was based on speculation and bias. (Pl.'s Br. 16.) Wilson contends that if the ALJ had concerns about the consistency and quality of the treating physicians' opinion, it was the ALJ's "duty to re-contact the physicians for clarification" under 20 C.F.R.§ 416.912. (Id. at 17.) However, the ALJ has a duty to re-contact the treating physicians only if he feels that the evidence in the record is inadequate to rule on whether Wilson is disabled. See 20 C.F.R.§ 416.912. In this case, the evidence in the record was adequate to support the ALJ decision. The ALJ explicitly cited the opinion of the ME, who testified that objective evidence indicated severe osteoarthritis, but that it did not meet or medically equal the criteria of 1.02 A. Further, the ALJ cited a number of inconsistencies between the treating physicians' records and Wilson's testimony that support the conclusion that the severity of Wilson's symptoms was overstated in the medical records. (R. at 27.) The ALJ further stated that "there is no evidence that obesity has precluded the claimant's ability to ambulate effectively" as required to receive disability under 1.02 A. (Id. at 28.)

Lastly, the ALJ's finding that Wilson was not disabled was supported by the testimony of the vocational expert ("VE"). The VE stated that, based on Wilson's age,

---

[6](...continued)
determinable mental impairments of Wilson's depression, it "did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore non-severe." (R. at 26.) Furthermore, there was no contention in Wilson's brief that the ALJ erred by not concluding that her depression was a "severe" impairment.

education, past relevant work experience and her RFC, there are over 23,000 existing jobs ranging from light to sedentary exertion levels that she is capable of performing. (R. at 32, 33.) Under step five of the disability evaluation, if the claimant is capable of performing other work in light of her RFC, then she is not disabled. (Id. at 25.) The VE's testimony of potential jobs met the Social Security Administration's burden of providing evidence that potential work exists in significant numbers for individuals with the claimants limitations.[7] (Id.) The ALJ stated that "although the claimant's additional limitations do not allow the claimant to perform the full range of sedentary work, the claimants limitations do not meet the "disabled" standard. The ALJ's justification for denying DIB is supported by the substantial weight of the record and is not the product of speculation, bias or substituted judgment. The ALJ provided an acceptable explanation for his ruling based on a fair and objective and accurate consideration of all evidence presented during the hearing[8].

---

[7] Wilson contends that the Commissioner failed to meet his burden of proof in Step 5 of the sequential evaluation because there was no evidence that the VE considered the ALJ's stipulation that she would need one extra day off of work per month when testifying to the potential employment opportunities for someone with Wilson's RFC. (Pl's. Br. 18.) However, the record explicitly shows that the ALJ told the VE that Wilson would have to take an additional off work each month and asked the VE how many jobs would be available. (R. at 374.) The VE testified that there would be nearly 24,000 jobs available in the state of Indiana. (Id.)

[8] Wilson further argued that the ALJ erred by failing to provide a full transcript of the record relating to the original claim filed by Wilson in 2002. (Pl.'s Br. 17.) However, Wilson failed to show that she was harmed by the absence of such evidence. Furthermore, the record included medical evidence from as early as 2000 and Wilson made no assertions that the record was inaccurate from a medical basis. The record produced was adequate for the ALJ to fairly adjudicate the case, thus he did not err by failing to provide the full transcript of the record.

*Conclusion*

For the reasons discussed in this Entry, the ALJ's conclusion denying Wilson's eligibility for disability benefits is supported by substantial evidence, and the court therefore <u>AFFIRMS</u> the ALJ's holding.

IT IS SO ORDERED.

Date: __06/08/2010_____

*[signature: Sarah Evans Barker]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Annette Lee Rutkowski
KELLER & KELLER
annette@2keller.com